NA

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Matthew Linden Harris,

                   Plaintiff,

v.

Joseph M. Arpaio, et al.,

                   Defendants.

No.   CV 14-2158-PHX-DGC (BSB)

**ORDER**

On September 29, 2014, Plaintiff Matthew Linden Harris, who is confined in the Maricopa County Towers Jail, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.  On October 14, 2014, Plaintiff filed a First Amended Complaint.  On October 30, 2014, Plaintiff filed a Second Amended Complaint.[1]  In a December 29, 2014 Order, the Court granted the Application to Proceed and dismissed the Second Amended Complaint because Plaintiff had failed to comply with Rule 3.4 of the Local Rules and Rule 8 of the Federal Rules of Civil Procedure.  The Court gave Plaintiff 30 days to file a third amended complaint that cured the deficiencies identified in the Order.

---

[1] Because Plaintiff filed his Second Amended Complaint prior to screening, the Court treated it as the operative Complaint and treated the original Complaint and First Amended Complaint as nonexistent.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

On January 26, 2015, Plaintiff filed his Third Amended Complaint (Doc. 13).  The Court will order Defendants Jackson, Henry, Sergeant A8992, and Arpaio to answer Count Four; will order Defendants Garcia, Padilla, B2534, VanDerAhe, Wise, Gonzalez, B1636, Irby, and Hafez to answer Count Six; and will dismiss the remaining claims and Defendants without prejudice.

## I.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II.    Third Amended Complaint

In his seven-count Third Amended Complaint, Plaintiff asserts claims for a denial of basic necessities, medical care, mail, due process, access to the courts, retaliation, and religion.  Plaintiff names 42 Defendants.

In Count One, Plaintiff asserts a claim for the denial of basic necessities and alleges the following facts: Plaintiff was detained on July 25, 2014.  Plaintiff requested socks from Defendant Unknown Detention Officer at the Fourth Avenue Jail, and Plaintiff was not provided any socks for four days.  Plaintiff was then transferred to the Lower Buckeye Jail where he still did not receive socks.  Defendants Unknown Detention Officers #4 and #5 at the Lower Buckeye Jail "regularly" denied Plaintiff's requests for toilet paper and soap.  Between September 10 and October 9, 2014, and again between October 14 and December 3, 2014, Defendants Unknown Detention Officers #2 and #3 at Towers Jail confiscated Plaintiff's towels and underwear.  Plaintiff alleges that Defendants Maricopa County Sheriff Arpaio and Towers Jail Captain Leslie have a policy of "denying basic necessities and removing them from [inmates'] possession."  Plaintiff claims he was "unable to perform basic hygiene, cleanliness tasks."

In Count Two, Plaintiff asserts a claim for the denial of constitutionally adequate medical care and alleges the following facts:  Between November 7, 2014, and January 5, 2015, Plaintiff submitted several requests to be treated for post-traumatic stress disorder (PTSD).  Some of these requests were not responded to and the others provided a response indicating that Plaintiff had been scheduled to see someone "soon."  As of the time of the filing of his Third Amended Complaint, Plaintiff still had not been seen for his PTSD.  Plaintiff claims that Defendant Tom Tegler, Director of Medical at Towers

Jail, is "responsible for this failure."

In Count Three, Plaintiff asserts a claim regarding the mail.  He claims that he subscribes to the Arizona Republic newspaper.  Plaintiff alleges that he did not receive the newspaper on November 13, November 16, November 23, and December 23, 2014.  "Detention staff" told Plaintiff that his newspaper had arrived on November 13, 2014.  Plaintiff claims that his newspaper was mutilated in retaliation for a grievance he filed on November 12, 2014.  Plaintiff claims that Defendant Unknown Mailroom Supervisor at Lower Buckeye Jail is responsible for ensuring that Plaintiff's newspaper arrives to him.

In Count Four, Plaintiff asserts a due process claim and alleges the following facts:  On September 29, 2014, Plaintiff saw Defendant Jackson, a sergeant at Towers Jail, begin writing him up for "allegedly graffiting [sic] the American flag in [his] cell."  Plaintiff told Jackson that his cellmate was responsible to the marking on the American flag.  Jackson "refused to review video evidence" and did not allow Plaintiff the opportunity to call witnesses.  Plaintiff further claims that he was not able to appeal the decision because "detention staff" refused to provide him the necessary form until the 24-hour window had already passed.  On October 17, 2014, Plaintiff was written up for another incident, and Defendant Henry, another sergeant at Towers Jail, did not allow Plaintiff to call witnesses.  On January 14, 2015, Plaintiff saw Defendant Sergeant A8992 regarding three separate write-ups, and Plaintiff was not allowed to call witnesses or appeal the decision.  Defendant Sergeant A8992 told Plaintiff that Defendant Arpaio was his boss and "responsible for the policy behind these actions."  Plaintiff further claims that he was not able to confront the witnesses against him, Defendants Unknown Sergeant and Unknown Lieutenant at Towers Jail, on January 14, 2015, because the report did not provide their names.  Plaintiff claims that he lost his freedom and privileges and was placed on 23-hour lockdown.

In Count Five, Plaintiff asserts a claim for a denial of access to the court and alleges the following facts:  Between August 8 and September 2, 2014, Plaintiff attempted to file a "notice of change of plea" to the Phoenix Municipal Court through

Inmate Legal Services.  Defendant "B0846, Inmate Legal Services" told Plaintiff the paperwork was "miscellaneous paperwork" and refused to process the documents.  In August 2014,[2] Inmate Legal Services staff refused to process Plaintiff's Rule 32 paperwork.  On October 15, 2014, Inmate Legal Services staff refused to process Plaintiff's sentence modification paperwork.  Between September 15 and December 3, 2014, Defendants Sergeant Pistor, Officer VanDerAhe, and Lieutenant Engleking would not allow Plaintiff to call his attorney.  Plaintiff contends that "this is a routine policy/procedure created by both [Defendants] Captain Leslie of Towers Jail and Sheriff Arpaio."  Plaintiff alleges that due to these incidents, he lost his "plea" and his incarceration will be "extended."

In Count Six, Plaintiff asserts a claim for retaliation and alleges the following facts:  In September 2014, Defendant Lewis, an officer at Towers Jail, "sexually harassed [Plaintiff] by telling [him] to perform acts of oral sex on him."  After Plaintiff filed a complaint against Lewis, Defendant Garcia, a lieutenant at Towers Jail, instructed Defendant Padilla, a sergeant at Towers Jail, to write Plaintiff up.  On January 5, 2015, Plaintiff filed a complaint against an unknown officer and was "immediately retaliated against by receiving write ups by" Defendants B2534; Officers VanDerAhe, Wise, Gonzalez, and B1636; and Sergeants Irby and Hafez.  Plaintiff also alleges "the use of excessive force" by Defendants VanDerAhe, Wise, and Gonzalez during the alleged write-ups.

In Count Seven, Plaintiff asserts a claim regarding the free exercise of religion and alleges the following facts:  On September 10, 2014, Defendant B2666 confiscated Plaintiff's bible.  Defendants Chaplains Iesha and Mallard refused to provide Plaintiff with a replacement bible.  Defendants Chaplains Iesha and Bristow "refused to provide baptismal services, marriage, and weekly religious services."  Defendant Officer B2687 told that he was not able to "grieve these matters."  In a separate incident in August 2012,

---

[2] Plaintiff does not indicate a year in the allegations in Count Five.  However, the Court will assume that Plaintiff is referring to August 2014, as all of his allegations refer to dates in 2014.

1   Defendant "FTO Sawyer" placed Plaintiff in handcuffs because Plaintiff filed a grievance

2   asking for a replacement bible.

3   **III.   Failure to State a Claim**

4           To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants

5   (2) under color of state law (3) deprived him of federal rights, privileges or immunities

6   and (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th

7   Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d

8   1278, 1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific

9   injury as a result of the conduct of a particular defendant and he must allege an

10  affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*,

11  423 U.S. 362, 371-72, 377 (1976).

12          **A.   Defendants**

13                 **1.   Unknown Sergeant #2 at Towers Jail; B0846, Inmate Legal
                         Services; Sergeant A3763 at Towers Jail; FTO Williams at
14                       Towers Jail; Unknown Sergeants #3 and #4 at Estrella Jail;
                         Unknown Sergeant, Laundry; Unknown Captain, Laundry;
15                       Officer Reed at Towers Jail; B2482 at Towers Jail; and
                         Unknown Mailroom Supervisor at Lower Buckeye Jail.**
16

17          Plaintiff does not allege any facts against Defendants Unknown Sergeant #2 at

18  Towers Jail; B0846, Inmate Legal Services; Sergeant A3763 at Towers Jail; FTO

19  Williams at Towers Jail; Unknown Sergeants #3 and #4 at Estrella Jail; Unknown

20  Sergeant, Laundry; Unknown Captain, Laundry; Officer Reed at Towers Jail; B2482 at

21  Towers Jail; and Unknown Mailroom Supervisor at Lower Buckeye Jail.  Accordingly,

22  the Court will dismiss the above-named Defendants.

23                 **2.   Leslie**

24          To state a valid claim under § 1983, plaintiffs must allege that they suffered a

25  specific injury as a result of specific conduct of a defendant and show an affirmative link

26  between the injury and the conduct of that defendant.  *See Rizzo*, 423 U.S. at 371-72, 377.

27  There is no *respondeat superior* liability under § 1983, and therefore, a defendant's

28  position as the supervisor of persons who allegedly violated Plaintiff's constitutional

rights does not impose liability.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Plaintiff has not alleged that Defendant Leslie personally participated in a deprivation of Plaintiff's constitutional rights or was aware of a deprivation and failed to act.  Plaintiff's claims that Leslie has a policy of denying inmates basic necessities and refusing to process inmate legal mail are too vague and conclusory to state a claim.  Thus, Plaintiff has failed to state a claim against Defendant Leslie for which relief could be granted, and Defendant Leslie will be dismissed.

### 3.    Defendants Unknown Sergeant and Unknown Lieutenant at Towers Jail

In Count Four, Plaintiff claims that he was not able to confront the witnesses against him, Defendants Unknown Sergeant and Unknown Lieutenant at Towers Jail, on January 14, 2015, because the report did not provide their names.  A pretrial detainee has a substantive due process right against restrictions that amount to punishment for a criminal offense.  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). The imposition of punishment for violation of rules requires the procedural protections described by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 565-66 (1974). *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996).  These safeguards are: (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so.  *Wolff*, 418 U.S. at 565-66.  However, inmates do not hold a constitutional right to confrontation and cross-examination in disciplinary proceedings, as "there would be considerable potential for havoc inside the prison walls."  *Id*. at 567.

As discussed above, Plaintiff does not have a constitutional right to confront witnesses in disciplinary proceedings.  Accordingly, the Court will dismiss Defendants Unknown Sergeant and Unknown Lieutenant at Towers Jail.

**4.    Lewis**

In Count Six, Plaintiff claims that Defendant Lewis, an officer at Towers Jail, sexually harassed Plaintiff by asking for oral sex.  "Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (internal citation omitted) (no Eighth Amendment violation by guard who, in an isolated incident, taunted prisoner and exposed himself to prisoner for 30–40 seconds while guard was in elevated, enclosed booth, and the guard never physically touched prisoner).

If true, the conduct described in Count Six is highly unprofessional and disturbing. However, the verbal harassment, even if sexual in nature, does not violate the Constitution.  Thus, the Court will dismiss Defendant Lewis.

**B.    Claims**

**1.    Basic Necessities**

To state a claim for unconstitutional conditions of confinement, a plaintiff must allege that a defendant's acts or omissions have deprived the inmate of "the minimal civilized measure of life's necessities" and that the defendant acted with deliberate indifference to an excessive risk to inmate health or safety.  *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002).  That is, a plaintiff must allege a constitutional deprivation that is objectively "sufficiently serious" to result in the denial of "the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834.  Whether conditions of confinement rise to the level of a constitutional violation may depend, in part, on the duration of an inmate's exposure to those conditions.  *Keenan v. Hall*, 83 F.3d 1083, 1089, 1091 (9th Cir. 1996) (citing *Hutto v. Finney*, 437 U.S. 678,

686-87 (1978)).  A plaintiff must also allege facts supporting that the prison official had a "sufficiently culpable state of mind," i.e., that the official acted with deliberate indifference to inmate health or safety.  *Farmer*, 511 U.S. at 834.  In defining "deliberate indifference," the Supreme Court has imposed a subjective test, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* at 837.  "'The circumstances, nature, and duration of a deprivation of [] necessities must be considered in determining whether a constitutional violation has occurred.'"  *Hearns v. Terhune*, 413, F.3d 1036, 1042 (9th Cir. 2005) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).

Plaintiff's allegations reflect that he was not given socks for four days, was "regularly" denied toilet paper and soap, and was denied towels and underwear for about two and a half months.  Plaintiff has not alleged facts to support that the denial of these items posed a substantial risk of harm or that any Defendant acted with deliberate indifference to such risk.  That is, Plaintiff does not allege that any named Defendant knew of and disregarded a substantial risk of harm to Plaintiff.  Plaintiff also claims that Defendants Arpaio and Leslie have a policy of denying inmates basic necessities.  This is too vague and conclusory to state a policy claim against Defendants Arpaio and Leslie.  For these reasons, Plaintiff fails to state a claim in Count One and it will be dismissed.

## 2.    Medical Care

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).   "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff asserts that he submitted several requests to be seen for PTSD over approximately a two-month period.  The requests were either ignored or Plaintiff was informed that he would be seen for PTSD "soon."  Plaintiff states that Defendant Tegler, the Director of Medical at Towers Jail, is "responsible for this failure."  Plaintiff does not allege facts showing that Defendant Tegler knew of Plaintiff's condition or the requests

1    Plaintiff made.  Plaintiff does not identify to whom he submitted the requests or who told

2    him that he would be seen "soon."   For these reasons, Plaintiff fails to state a claim

3    against Defendant Tegler for the denial of constitutionally adequate medical care in

4    Count Two, and Count Two will be dismissed.

5                    **3.    Mail**

6            Under the First Amendment, only mail from an inmate's attorney, or prospective

7    attorney, constitutes "legal mail" that, when appropriately labeled, is entitled to greater

8    protection than other mail.  *See Wolff*, 418 U.S. at 576 (stating that legal mail must be

9    specifically marked as originating from an attorney).  As to non-legal mail, an inmate

10   retains First Amendment rights not inconsistent with his status as a prisoner and with

11   legitimate penological objectives of the corrections system.  *See Shaw v. Murphy*, 532

12   U.S. 223, 231 (2001); *Clement*, 364 F.3d at 1151.  Thus, an inmate has a First

13   Amendment right to receive mail; however, that "right is subject to 'substantial

14   limitations and restrictions in order to allow prison officials to achieve legitimate

15   correctional goals and maintain institutional security.'"  *Prison Legal News v. Lehman*,

16   397 F.3d 692, 699 (9th Cir. 2005); *Morrison v. Hall*, 261 F.3d 896 (9th Cir. 2001);

17   *Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir. 2001).  A prisoner also has a

18   Fourteenth Amendment due process liberty interest in receiving notice that his incoming

19   mail has been withheld by prison authorities.  *Frost v. Symington*, 197 F.3d 348, 353 (9th

20   Cir. 1999).  Nevertheless, prisons may regulate the processing of inmate mail so long as

21   those regulations further an important or substantial government interest other than the

22   suppression of expression.  *See Procunier v. Martinez*, 416 U.S. 396, 411-12 (1974),

23   *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 412-414 (1989);

24   *Valdez*, 302 F.3d at 1048 (jail personnel may regulate speech if a restriction is reasonably

25   related to legitimate penological interests and an inmate is not deprived of all means of

26   expression, citing *Turner v. Safley*, 482 U.S. 78, 92 (1986)). "Prevention of criminal

27   activity and the maintenance of prison security are legitimate penological interests which

28   justify the regulation of both incoming and outgoing prisoner mail."  *O'Keefe v. Van*

*Boening*, 82 F.3d at 326.

Plaintiff sues Defendant Unknown Mailroom Supervisor at Lower Buckeye Jail for failing to ensure that his newspaper arrived to him.  However, it appears that Plaintiff is seeking to hold the unknown Mailroom Supervisor liable on a theory of *respondeat superior*.  As discussed above, there is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  *Monell*, 436 U.S. at 691-92 (1978); *Hamilton*, 981 F.2d at 1067; *Taylor*, 880 F.2d at 1045.

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff does not allege facts to support the assertion that Defendant Unknown Mailroom Supervisor knew about Plaintiff's newspaper subscription, knew that Plaintiff did not receive the newspaper on the dates alleged, or is the individual who allegedly mutilated Plaintiff's newspaper.  Moreover, Plaintiff does not allege that the denial of the newspaper on the alleged dates did not achieve a legitimate correctional goal or was not done to maintain institutional security.  For these reasons, Plaintiff has failed to state a First Amendment mail claim against Defendant Unknown Mailroom Supervisor at Lower Buckeye Jail in Count Three, and Count Three will be dismissed.

To the extent Plaintiff seeks to assert a claim for retaliation in Count Three, he fails to state a claim against a named Defendant.  A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a

constitutionally protected right, and (2) that the action "advanced no legitimate penological interest").  The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Plaintiff claims that his newspaper was mutilated in retaliation for a grievance he filed on November 12, 2014.  However, Plaintiff fails to allege who allegedly mutilated his newspaper, how that person knew about the grievance filed on November 12, 2014, that his exercise of a First Amendment right was chilled, or that he suffered more than minimal harm.  For these reasons, to the extent Plaintiff seeks to assert a claim for retaliation in Count Three, that portion of Count Three will be dismissed.

### 4.       Access to the Court

The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents.  *Lewis v. Casey*, 518 U.S. 343, 350 (1996).  The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate them effectively once filed with a court.  *Id.* at 354.  The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Id.*  at 356.

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation.  *Id*. at 349.  To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present.  *Id*. at 352-53.

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim."  *Id*. at 354.  The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything

1    from shareholder derivative actions to slip-and-fall claims." *Id*. at 355.  The nonfrivolous

2    claim must be a direct or collateral attack on the inmate's sentence or a challenge to the

3    conditions of his confinement.  *Id*.  "Impairment of any *other* litigating capacity is simply

4    one of the incidental (and perfectly constitutional) consequences of conviction and

5    incarceration."  *Id*. (emphasis in original).

6           With regard to the denial of telephone calls to the plaintiff's attorney, to state a

7    claim for denial of access to the courts, the plaintiff must show that he did not have

8    another meaningful way to contact his attorney.  *Williams v. ICC Committee*, 812 F. Supp

9    1029, 1034 (N.D. Cal. 1992).  That is, the plaintiff must allege facts that he is not able to

10   contact his attorney by mail or visitation from his lawyer is denied.  *Id*.

11          In Count Five, Plaintiff asserts that Defendant B0846 refused to process his

12   "notice of change of plea" to the Phoenix Municipal Court because the paperwork was

13   "miscellaneous paperwork."  Plaintiff alleges that due to this refusal, he lost his "plea"

14   and his incarceration will be extended.  Plaintiff's allegations are too vague to meet the

15   injury requirement and state a claim because it appears the Maricopa County Superior

16   Court would not have taken any action on the "notice of change of plea."[3]

17          Plaintiff also asserts that in August 2014, Inmate Legal Services staff refused to

18   process Plaintiff's Rule 32 paperwork, and on October 15, 2014, Inmate Legal Services

19   staff refused to process Plaintiff's sentence modification paperwork.  These facts are also

20   insufficient to state a claim because Plaintiff does not allege who refused to process this

21   paperwork or how he was injured by this refusal.[4]

---

[3] Upon review, it appears Plaintiff is referring to an admission of a probation
violation rather than a change of plea, as Plaintiff was charged with a violation of
probation on August 4, 2014.  *See State v. Harris*, CR2013-115392 (Maricopa County
Superior Court docket, *available at* http://apps.supremecourt.az.gov/publicaccess/
caselookup.aspx) (search "Search by Case Number" for "Case Number" "CR
2013115392" and "Court" "Maricopa County Superior) (last visited Feb. 19, 2015).  On
January 27, 2015, the court acknowledged receipt of a letter from Plaintiff regarding the
admission of the probation violation and stated that it could not accept a written
admission of probation, and did not take further action on the pleading.  *See*
http://www.courtminutes.maricopa.gov/docs/ Criminal/012015/m6672943.pdf (last
visited Feb. 19, 2015).

[4] It appears Plaintiff filed a Rule 32 Petition on October 31, 2014.  *See*

Plaintiff also claims that Defendants Pistor, VanDerAhe, and Engleking would not allow Plaintiff to call his attorney. This is also insufficient to state a claim for the denial of access to the courts because Plaintiff has not alleged facts showing that he could not contact his attorney by another means of communication. Plaintiff also claims that "this is a routine policy/procedure created by both [Defendants] Captain Leslie of Towers Jail and Sheriff Arpaio." This assertion is too vague and conclusory. Plaintiff has failed to allege any *facts* about how this alleged custom, policy, practice, action, or inaction was implemented by Defendants Leslie and Arpaio against Plaintiff. That is, Plaintiff has failed to allege facts supporting that Defendants Leslie and Arpaio actually had a policy, practice, or custom that was implemented to Plaintiff's detriment. For the reasons outlined above, Plaintiff fails to state a claim for the denial of access to the courts, and the Court will dismiss Count Five.

### 5.        Excessive Force

To the extent Plaintiff is attempting to bring a claim for excessive force in Count Six, he fails to state a claim. The Fourteenth Amendment Due Process Clause, not the Eighth Amendment, protects pretrial detainees from excessive force that amounts to punishment. *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). "[T]he Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention." *Id.* (quoting *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996).

The Fourth Amendment does not prohibit the use of reasonable force. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tatum*, 441 F.3d at 1095; *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003). The

http://www.courtminutes.maricopa.gov/docs/Criminal/102014/m6545546.pdf (last visited Feb. 19, 2015).

Court must balance the nature and quality of the intrusion against the countervailing governmental interests at stake.  *Graham*, 490 U.S. at 396; *Lolli*, 351 F.3d at 415. Moreover,

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  . . . .  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Graham*, 490 U.S. at 396 (citations omitted).

Plaintiff's allegations that Defendants VanDerAhe, Wise, and Gonzalez used excessive force when they were writing him up are not sufficient to state a claim. Plaintiff has failed to identify what Defendants did to Plaintiff during the write-ups or the facts and circumstances confronting Defendants.  He does not identify if there was an immediate threat to the safety of the officers or others, or any other facts to suggest Defendants' alleged use of force was objectively unreasonable.  Moreover, Plaintiff does not identify what each particular Defendant did or failed to do.  Thus, Plaintiff has failed to state a claim of excessive force against Defendants VanDerAhe, Wise, and Gonzalez in Count Six, and that portion of Count Six will be dismissed.

### 6.    Religion

An inmate may bring a claim for violation of his religious exercise rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5, and the First Amendment.  RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of an institutionalized person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means."  42 U.S.C. § 2000cc-1(a) (1) - (2).  Therefore, to state a claim under RLUIPA, a plaintiff must allege facts to support that government action has substantially burdened the exercise of the plaintiff's religion without a compelling government interest and by the least restrictive means.  *See Guam v. Gurerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002).  "[A] 'substantial burden' on 'religious

exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quotations omitted). Thus, an institutionalized person's religious exercise is substantially burdened "'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief.'" *Id.*

In addition, "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). However, free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *Id.* To state a First Amendment free exercise claim, a plaintiff must allege that a defendant substantially burdened his religious practice without a justification reasonably related to legitimate penological interests. *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *Warsoldier*, 418 F.3d at 995 (citing *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (pressure on exercise must be substantial)); *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (same). The religious practice or exercise at issue must be rooted in sincerely held religious belief and not in "'purely secular' philosophical concerns." *Malik*, 16 F.3d at 333 (internal citation omitted).

Plaintiff alleges that Defendant B2666 confiscated Plaintiff's bible and Defendants Chaplains Iesha and Mallard would not provide Plaintiff with a replacement bible. Plaintiff further alleges that Defendants Iesha and Bristow would not "provide baptismal services, marriage, and weekly religious services." Defendant Officer B2687 told Plaintiff that he was not able to "grieve these matters." In August 2012, "FTO Sawyer" placed Plaintiff in handcuffs because Plaintiff filed a grievance asking for a replacement bible. Plaintiff's allegations are insufficient to state a claim because he does not allege the absence of a compelling government interest. Moreover, while Plaintiff asserts that

he requested a replacement bible, baptismal services, marriage services, and weekly religious services, he does not allege that these things were central to his religious exercise nor does he allege that the inability to receive them substantially burdened his religious exercise.  For these reasons, Plaintiff has failed to state a claim in Count Seven, and the Court will dismiss Count Seven.

## IV.   Claims for Which an Answer Will be Required

Liberally construed, Plaintiff sufficiently states a claim for the denial of due process against Defendants Jackson, Henry, Sergeant A8992, and Arpaio in Count Four, and the Court will require these Defendants to answer Count Four.

Liberally construed, Plaintiff sufficiently states a claim for retaliation against Defendants Garcia, Padilla, B2534, VanDerAhe, Wise, Gonzalez, B1636, Irby, and Hafez in Count Six, and the Court will require these Defendants to answer Count Six.

## V.   Warnings

### A.   Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed *in forma pauperis*.  Failure to comply may result in dismissal of this action.

### B.   Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### C.   Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also,

Plaintiff must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

> **D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Counts One, Two, Three, Five, and Seven are **dismissed** without prejudice.

(2)     Defendants Unknown Sergeant #2 at Towers Jail; B0846, Inmate Legal Services; Sergeant A3763 at Towers Jail; FTO Williams at Towers Jail; Unknown Sergeants #3 and #4 at Estrella Jail; Unknown Sergeant, Laundry; Unknown Captain, Laundry; Officer Reed at Towers Jail; B2482 at Towers Jail; Unknown Mailroom Supervisor at Lower Buckeye Jail; Captain Leslie; unknown Sergeant at Towers Jail; unknown Lieutenant at Towers Jail; and Officer Lewis are **dismissed** without prejudice.

(3)     Defendants Jackson, Henry, Sergeant A8992, and Arpaio must answer Count Four.  Defendants Garcia, Padilla, B2534, VanDerAhe, Wise, Gonzalez, B1636, Irby, and Hafez must answer Count Six.

(4)     The Clerk of Court must send Plaintiff a service packet including the Third Amended Complaint (Doc. 13), this Order, and both summons and request for waiver forms for Defendants Jackson, Henry, Sergeant A8992, Arpaio, Garcia, Padilla, B2534, VanDerAhe, Wise, Gonzalez, B1636, Irby, and Hafez.

(5)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Third Amended Complaint on a Defendant within

120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)     The United States Marshal must retain the Summons, a copy of the Third Amended Complaint, and a copy of this Order for future use.

(8)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a)     personally serve copies of the Summons, Third Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Third Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9)     **A Defendant who agrees to waive service of the Summons and Third Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10)    Defendants must answer the Third Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12)    This matter is referred to Magistrate Judge Bridget S. Bade pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 23rd day of February, 2015.

_____
David G. Campbell
United States District Judge